IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RASHAD HAKEEM WILLIAMS, | ) |
| *Plaintiff*, | ) |
| v. | ) No. 19 C 581 |
| BETH A. HART, DR. JAYACHANDRAN, M.D., and DAVID MANSFIELD | ) Judge Virginia M. Kendall |
| *Defendants*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rashad Hakeem Williams, an inmate formerly in the custody of the Stateville Correctional Center, filed this lawsuit against Defendants Beth A. Hart, Dr. Ashwin Jayachandran, M.D., and David Mansfield (collectively the "Defendants"), alleging violations of his civil rights pursuant to 42 U.S.C. § 1983. (Dkt. 12 ¶ 2). Specifically, Williams argues that he was administered psychotropic drugs against his will while at Stateville in violation of the Due Process Clause of the Fourteenth Amendment. (*Id.*).

Under the Prison Litigation Reform Act ("PLRA"), Williams, like any prisoner, may not initiate a suit concerning his confinement conditions under federal law prior to exhausting "such administrative remedies as are available" within the jail. *See* 42 U.S.C. § 1997e(a). Defendants move to dismiss, claiming that Williams failed to properly exhaust the administrative remedies available to him because he never attempted to grieve the specific events giving rise to his claims. (Dkt. 57). Williams admits that he never filed a grievance but contends that the grievance process was unavailable to him. (Dkt. 59). Based on this conflict, on February 25, 2021, the Court held a

*Pavey* hearing to resolve the factual issues surrounding Williams' exhaustion. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Defendants have not met their burden of proving that Williams failed to exhaust the available administrative remedies, therefore Defendants' Motion to Dismiss based on failure to exhaust [Dkt. 57] is denied.

## BACKGROUND

On or about December 8, 2016, Williams was transferred from Cook County Jail to Stateville Correctional Center. (Dkt. 12 at ¶ 13). On December 13, 2016, Williams was diagnosed with an Unspecified Psychotic Disorder. (*Id*. at ¶ 14). Williams was placed on a 15-minute close supervision watch, allegedly to die suicidal ideation, and remained on watch through January 19, 2017. (*Id*. at ¶ 15). On March 16, 2017, the Treatment Review Committee at Stateville held a hearing to review a recommendation by Williams' treating mental health professionals that Williams be "placed on enforced medication status," including the "involuntary administration of psychotropic medication, and any blood tests deemed necessary" to monitor the medication. (*Id*. at ¶ 17). Defendant Hart, a Licensed Clinical Social Worker at Stateville, served as Chairperson of the Committee. (*Id*. at ¶ 18). Defendant Jayachandran, a psychiatrist, served as the second Committee Member, and Defendant Mansfield, an employee in Stateville's Clinical Services department, was present as the designated Staff Assistant. (*Id*.).

Williams alleges that Defendants violated Williams' due process rights by failing to afford Williams certain minimum procedural protection. In particular, Williams alleges that he was not provided written notice 24 hours before the hearing, (dkt. 12 at ¶¶ 27–30; Dkt. 57-2 at 91:16–22), that he was not afforded the opportunity to meet with or receive assistance from David Mansfield, his designated Staff Assistant, prior to the hearing, (dkt. 12 ¶ 31); and he was not afforded the opportunity to identify witnesses to be interviewed and presented at the hearing. (Dkt. 12 ¶ 32; Dkt. 57-2 at 91:23–92:1).

The Treatment Review Committee ultimately determined that Williams suffered from a serious mental illness, and that there was a substantial risk that, if untreated, his condition could result in serious physical harm to himself and potentially to others. (*Id*. at ¶ 20). The Committee concurred with Williams' treating mental health professional's recommendation to initiate enforced medication status, and the involuntary administration of antipsychotic medication. (*Id*. at ¶ 21).

After the hearing, Williams was placed in a crisis cell where he was held on crisis watch status. (*Id*. at ¶ 22). A correctional officer returned to Williams' cell and forced him to allow a nurse to use a syringe to inject him with Haldol, an antipsychotic drug. (*Id*.). Williams began experiencing dizziness, which caused him to pass out, fall, hit his head on the floor, and fall asleep after being injected. (*Id*. at ¶ 23). When Williams woke up, he suffered partial paralysis in his legs and memory loss, which a nurse stated might have been a side effect of the Haldol. (*Id*. at ¶ 24). Williams has continuously experienced dizziness, blackouts, memory loss, difficulty maintaining a clear pattern of thought, constipation, and erectile dysfunction since being injected with Haldol. (*Id*. at ¶ 25).

Williams stayed on "crisis watch" status until his transfer to the Cook County Jail on April 3, 2017, where he still remains awaiting trial on charges of murder, attempted murder, and unlawful possession of a firearm. (Dkt. 57-2 at 7:23–9:2; 76:6–78:2). The Treatment Review Committee Hearing Summary, which includes a "Notice" that the "committed person has the right to appeal this decision to the Agency Medical Director by filing a written appeal with the Chairperson of the Treatment Review Committee within five days of receipt of this report[,]" was not served upon Williams until 9:00 am on April 3rd, the day he was transferred to Cook County Jail. (*See* Dkt. 59-1).

Williams acknowledges that he never filed a grievance regarding the events that gave rise to his present claims. (Dkt. 12 at ¶ 34). Williams had no access to pen and paper, phone calls, mail, visits, or the law library due to policies governing crisis watch status. (*Id.*). Williams asked a correctional officer for a grievance form and writing instrument and was told that he could not have those materials while in the crisis cell. (*Id.* ¶ 35). The correctional officer also told Williams that Williams only had 15 days to grieve the issue, and that the statute of limitations for the grievance process would run out before Defendants would authorize his removal from crisis watch status. (*Id.* ¶ 36). Williams requested materials to file a grievance every day after the Treatment Review Committee hearing and administration of the Haldol shot. (Dkt. 57-2 at 93:7–11). Williams testified at his deposition that, "I asked officers, I asked the mental health specialists, I asked the counselors, anybody that I could see." (*Id.* at 93:12–16). Williams stated he asked for grievance forms from "…[e]vn nurses that brought the medication." (*Id.* at 94:6–9). Williams cannot recall the name of the individuals he purportedly asked for a grievance form and pen. (*Id.* at 94:10–12). Further, Williams explained at his deposition that he never saw his designated general population correctional counselor while on close watch (*id.* at 93:18–19), and despite communicating that it was his right to speak to a counselor, he was told by a correctional officer that his counselor would not see him while he was on close watch. (*Id.* at 94:15–95:4.)

Upon arrival at the Cook County Jail, Williams again requested to file a grievance, but was told that he could not submit a grievance at Cook County regarding an incident that occurred at Stateville. (*Id.* ¶ 37; Dkt. 57-2 at 92:11–93:1).

## LEGAL STANDARD

"Prisoners must properly exhaust all available administrative remedies before pursing claims, including § 1983 actions, in federal court." *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (citing 42 U.S.C. § 1997e(a)). Moreover, the prisoner must exhaust his grievances

according to prison procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 84, 88 (2006). This Court requires strict adherence to the exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, "[p]rison officials may not take unfair advantage of the exhaustion requirement ... and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *see also Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (grievance process unavailable given jail's failure to respond to inmate's grievance, his inquiries about it, and his follow-up grievance during four-month period after response was due). While exhaustion requirements are strict, failure to exhaust is an affirmative defense and the Defendants maintain the burden of proof of showing that Williams failed to exhaust here. *See Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005). To be available as an administrative remedy, the remedy must "be available in fact and not merely in form." *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013). Courts analyze a prisoner's exhaustion under the preponderance of the evidence standard. *See, e.g.*, *Hebron v. Baldwin*, No. 17-cv-6254, 2020 WL 757900, * 1 (N.D. Ill. Feb. 14, 2020) (citing *Jones v. Dart*, No. 14 C 1929, 2016 WL 1555588, at *2 (N.D. Ill. Apr. 18, 2016)).

## DISCUSSION

Under the PLRA, an inmate must exhaust his administrative remedies by following the procedural rules for grievances where he is incarcerated. Broadly speaking, there are at least three kinds of circumstances when a prison or jail's administrative remedy can be deemed unavailable, despite its availability on the books. *Ross v. Blake*, 136 S.Ct. 1850, 1859 (2016). First, a remedy is unavailable if an administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. Second, if administrative rules are so opaque or confusing that "no reasonable prisoner can use them," then they are not

considered available. *Id*. Third, if prison administrators or staff "thwart inmates from taking advantage of a grievance process," then the process is not available. *Id.* at 1860. This can happen through "affirmative misconduct," which includes refusing to provide or respond to grievance forms or threatening inmates for grieving among other examples. *See Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (remedies unavailable where prisoner was shackled to his hospital bed and was uninformed about the grievance process); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (remedies unavailable where prison staff prevented prisoner access to grievance forms); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (remedies unavailable where prisoner's case manager denied him grievance forms, threatened him, and solicited other inmates to attack him in retaliation for filing grievances); *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015) (remedies unavailable where prisoner transferred between two prisons had no access to grievance process and where later allotted time for filing grievance was impracticable), *overruled on other grounds by Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020); *Thomas v. Reese,* 787 F.3d 845, 847–48 (7th Cir. 2015) (remedies unavailable where prisoner did not have access to grievance handbook in segregation and correctional officer tells prisoner that prisoner cannot file grievance when in fact prisoner can do so).

Williams did not fail to exhaust his administrative remedies because under the framework none were available to him. At the *Pavey* hearing on February 25, 2021, Williams testified that during the 18-day period he remained on "close watch," he came in contact with numerous Stateville correctional officers, mental health professionals, and nurses. (Tr. at 9:14–22; Dkt. 57-2 at 76:6–78:2, 87:5–8). Williams further testified that he asked several of those individuals for a pen and grievance forms and was advised that the materials were unavailable to him because he was on close watch. (*Id*. at 9:23–10:3; Dkt. 57-2 at 93:12–16, 94:6–9). "If prison employees refuse to

provide inmates with those forms when requested, it is difficult to understand how the inmate has any available remedies." *Dale*, 376 F.3d at 656; *Kaba*, 458 F.3d 678, 684 (7th Cir. 2006) (remedies unavailable where prisoner denied grievance forms among other affirmative wrongdoing).

Defendants argue, based on the sworn declaration of Anna McBee, a Grievance Officer at Stateville, that Williams could have dictated a grievance to his correctional officer. (Dkt. 57 at 5). But Williams testified at his *Pavey* hearing that he asked several individuals to see his correctional counselor and was told that the counselor "did not regulate issues on close watch." (Tr. at 10:4–11). Additionally, Williams testified earlier at his deposition that he never saw his designated general population correctional counselor while on close watch. (Dkt. 57-2 at 93:18–19). Further, although he expressed that it was his right to speak to a counselor, he was told by a correctional officer that his counselor would not see him while he was on close watch. (*Id.* at 94:15–95:4.) Where prison officials "misled… individual inmates… such interference with an inmate's pursuit of relief renders the administrative process unavailable." *Ross*, 136 S.Ct. at 1860; *see also Kaba*, 458 F.3d at 684 ("[W]hen prison officials prevent inmates from using the administrative process… the process that exists on paper becomes unavailable in reality.")

Finally, Williams testified that upon arrival at the Cook County Jail, he again requested a grievance form and was told that he could not grieve an issue at Cook County that occurred at Stateville. (Tr. at 19:14–25; Dkt. 57-2 at 92:11–93:1). Defendants contend that Williams could have written a correspondence to the Illinois Department of Corrections Administrative Review Board. (Dkt. 57 at 6). However, Williams was not informed that he could file a grievance straight to the administrative review board. (Tr. at 20:1–3). Therefore, the Defendants have failed to carry their burden of demonstrating that Williams did not exhaust his available administrative remedies because the Defendants' position requires inmates to follow a procedure that they are not aware

of. *See White v. Bukowski*, 800 F.3d 392, 397 (7th Cir. 2015)("Prisoners are required to exhaust grievance procedures they have been told about, but not procedures that they have not been told about."); *see also Hurst v. Hantke*, 634 F.3d 409, 411 (7th Cir. 2011) ("[A] remedy is not available if essential elements of the procedure for obtaining it are concealed."); *Hernandez*, 814 F.3d at 842 ("It is not incumbent on the prisoner 'to divine the availability' of grievance procedures."); *King*, 781 F.3d at 896 ("Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about.")

Finally, at the *Pavey* hearing, Defendants attempted to argue that because Williams had made previous grievances, he knew how to properly grieve here. (Tr. at 6: 5–25, 7: 15–25, 8: 1–23). However, the issue of whether Williams had previously filed a grievance and had knowledge of the grievance process is irrelevant when the question is whether the remedies were available to him in this instance.

There is no issue of material fact as to whether any administrative remedies were available to Williams. The record shows that Williams repeatedly requested materials to file a grievance and was not given these materials. Failure to exhaust administrative remedies is an affirmative defense, and Defendants did not meet their burden of proving that Williams had available remedies that he did not utilize. *See Turley*, 729 F.3d at 650.

## CONCLUSION

For the foregoing reasons, the Court concludes that Defendants failed to carry their burden of proving that Williams failed to exhaust the administrative remedies available to him. Defendants' Motion to Dismiss for failure to exhaust [Dkt. 57] is denied.

_____
Virginia M. Kendall
United States District Judge

Date: April 21, 2021